# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

SEAN ALEXANDER PUGH,

      Petitioner,

v.                              Case No. 8:05-CV-1684-T-30EAJ

WALTER A. MCNEIL[1],

      Respondent.

_____/

# ORDER

Petitioner, a State of Florida inmate proceeding *pro se*, petitions for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 and challenges the validity of his convictions for nineteen counts of inducing a child into committing a sexual performance, three counts of sexual battery with a weapon or force, and one count of making or having instruments and material for counterfeiting driver's licenses (Dkt. #1, #13).   Petitioner challenges his convictions on grounds of a denial of his rights to a fair trial, effective assistance of counsel, equal protection and due process.   The Respondent argues that Petitioner's claims are procedurally barred, fail to present a federal constitutional issue, or fail to meet the threshold requirements of 28 U.S.C. § 2254 (d) and (e).

---

[1] Walter A. McNeil, Secretary of the Florida Department of Corrections, is substituted as the party respondent.  Fed. R. Civ. P. 25(d).

Petitioner was convicted and sentenced to an aggregate term of 706 months' imprisonment.[2] The state appellate court affirmed Petitioner's judgment and sentence (Dkt. #14, Ex. 4). The state court denied Petitioner's two subsequent state Rule 3.850 motions (Dkt. #14, Exs. 5, 23) and his state Rule 3.800(a) motion to correct an illegal sentence (Dkt. #14, Ex. 31). Petitioner appealed the denial of these three motions and the state appellate court affirmed (Dkt. #14, Exs. 9, 20, 28, 36). Petitioner's Section 2254 petition followed.

## STANDARD OF REVIEW

Because this action commenced after April 24, 1996, Section 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), governs this proceeding. *Wilcox v. Florida Dep't of Corr.*, 158 F.3d 1209, 1210 (11th Cir. 1998), *cert. denied*, 531 U.S. 840 (2000). Section 2254(d), which creates a highly deferential standard for federal court review of state court adjudications, states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

---

[2] Count One of the amended Information charged Petitioner with armed sexual battery (Dkt. #14, Ex. 1, Vol. I, p. 17). This charge was severed before trial. The amended Information also charged Petitioner with one count of resisting arrest and one count of possession of marijuana, both misdemeanor offenses. Petitioner enter a *nolo contendere* plea to the misdemeanor charges and was sentenced to time-served.

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000), the Supreme Court interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied--the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002). *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that we are to decide.").

Petitioner has the burden of overcoming a state court factual determination by clear and convincing evidence. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption

of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness applies only to findings of fact, not mixed determinations of law and fact. *Parker v. Head*, 244 F.3d 831, 836 (11th Cir.), *cert. denied*, 534 U.S. 1046 (2001). Petitioner's petition is subject to the provisions of the AEDPA because his conviction was entered after the AEDPA was enacted. Consequently, a presumption of correctness attaches to the finding of fact in the trial court's rejection of Petitioner's claims.

## FACTS[3]

In May 1998, Misty Tate ("Tate") told Officer Scott McDonald of the St. Petersburg Police Department that another girl, Jamie Morris ("Morris"), had been raped by Petitioner. Officer McDonald ran a computer check on Petitioner and discovered outstanding warrants for Petitioner's arrest. Officer McDonald and other officers set up surveillance at Tate's house. When Petitioner eventually arrived at the house, he was arrested. A search of Petitioner's vehicle revealed identification cards, photographs and a videotape related to the victims and an online adult video network.

Heather Nicole Miller ("Nikki"), who was sixteen years old in May 1998, worked for Petitioner in his online business by lying nude in front of a camera masturbating and playing with sex toys. Nineteen year-old Jamie Morris ("Morris") was hired by Petitioner and worked for him for three months, lying on a bed in front of a camera masturbating. Petitioner forced Morris to become his "sex slave," forcing her at gunpoint to undress on camera,

---

[3] This summary of the facts derives from Petitioner's brief on direct appeal (Dkt. #14, Ex. 2).

masturbate and have sex with Petitioner.  Petitioner penetrated Morris against her will.  Tate, who was seventeen years old in May 1998, worked for Petitioner and gave nine or ten internet performances.  Tate was also raped at gunpoint by Petitioner.  Petitioner obtained false identification for Nikki and Tate upon discovering their ages.

**Ground One**

Petitioner alleges that the trial court erred by excluding the testimony of an expert witness about whether sexual acts depicted on the video constituted sexual battery.  The state court rejected this claim on direct appeal (Dkt. #14, Ex. 4).

At trial, the defense called Dr. Theodore Blau to testify as a psychological expert (Dkt. #14, Ex. 1, Vol. VI, pp. 527-28).  During a proffer outside the presence of the jury, defense counsel sought to have Dr. Blau testify about "profiles of sexual behavior in rape" (Dkt. #14, Ex. 1, Vol. IV, p. 537).  After further questioning and explanation by Dr. Blau, the state court excluded testimony about rape profiles for failure to satisfy the *Frye*[4] test:

> Court:    . . .First of all, I didn't really hear much to establish the Frye test. And second of all, I don't think that this jury needs expert opinion to aid them in their decision on the issue of whether or not this is a rape or it is not a rape. . . .

---

[4]  *Frye v. United States*, 293 F. 1013, 1015 (D.C. Cir. 1923), holds that expert testimony is admissible if the testimony is premised upon principles or techniques generally accepted in the relevant scientific community.  Florida law requires a court to conduct a *Frye* hearing to determine the admissibility of expert scientific opinion evidence.  *Smith v. State*, 931 So.2d 790, 806, n. 10 (Fla. 2006).

| | |
|---|---|
| Counsel: | So as we are right now, you're going to be permitting me to talk to what we talked about before, pornography? |
| Court: | Absolutely.  And I think that's consistent with your defense.  And I'll certainly allow you to develop the fact that there are - - that there is a market for tapes of rapes and, you know, S & M and all that type of stuff.  And you can qualify him as an expert psychologist. |
| Counsel: | Thank you, Your Honor. |
| Court: | Given his expertise in pornography where he categorized all this information stuff. |
| Counsel: | Okay.  Also just to clarify, you're also ruling that it is necessary for Frye to be met for any types of opinion as to profiling of rapes? |
| Court: | Absolutely. |
| Counsel: | And that in this particular case, Frye has not been met, therefore, your ruling is that that would be inadmissible? |
| Court: | And I'm also ruling that that type of testimony is - - about what is a rape and what is not a rape when someone views a videotape is so basic and so well known that the expert's opinion would not aid the jury in its deliberations. |

(Dkt. #14, Ex. 1, Vol. IV, pp. 566-68).

To the extent that Petitioner's claim, liberally construed, asserts a due process violation, the claim warrants no relief.  Petitioner presented this claim on direct appeal based on state law grounds only and failed to allege the violation of a federal constitutional right. Before a federal court may grant habeas relief, a federal habeas petitioner must exhaust every available state court remedy for challenging his conviction, either on direct appeal or in a state post-conviction motion.  28 U.S.C. § 2254(b)(1)(A), (c); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).  "[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. at 842.  *See also Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003) ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.") (citations omitted)).  A federal habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented." *Pruitt v. Jones*, 348 F.3d 1355, 1358 (11th Cir. 2003).

A state prisoner "'must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process,' including review by the state's court of last resort, even if review in that court is discretionary." *Pruitt v. Jones*, 348 F.3d at 1358-59 (*quoting O'Sullivan v. Boerckel*, 526 U.S. at 845).  To exhaust a claim, a petitioner must present the state court with the particular legal basis for relief in addition to the facts supporting the claim. *See Snowden v.*

*Singletary*, 135 F.3d 732, 735 (11th Cir. 1998) ("Exhaustion of state remedies requires that the state prisoner 'fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass on and correct alleged violations of its prisoners' federal rights.'") (*quoting Duncan v. Henry*, 513 U.S. 364, 365 (1995)).   The prohibition against raising an unexhausted claim in federal court extends to both the broad legal theory of relief and the specific factual contention that supports relief.   *Kelley v. Sec'y for Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004).

Petitioner failed to present the federal component of Ground One to the state court on direct appeal.   Consequently, he deprived the state courts of a "full and fair opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. at 845.   A federal court cannot grant a Section 2254 petition unless the petitioner has exhausted every available state court remedy.   *Snowden v. Singletary*, 135 F.3d at 735.   Petitioner's exclusively state law arguments presented on direct appeal leave the exhaustion requirement unsatisfied. *Duncan v. Henry*, 513 U.S. at 365.   *See also Baldwin v. Reese*, 541 U.S. 27, 32 (2004) ("A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'").   Ground One remains unexhausted and, therefore, federal review is precluded.

Petitioner cannot return to state court to present his federal claim.  Because he could have raised and preserved a federal constitutional claim on direct appeal, Petitioner was precluded from doing so collaterally in a Rule 3.850 motion.  *See e.g.*, *Childers v. State*, 782 So.2d 946, 947 (Fla. 4th DCA 2001) ("The law is clear that where an issue could have been raised on direct appeal, it is not the proper subject for a Rule 3.850 motion.") (citations omitted).  The state procedural rules preclude a second direct appeal.  Consequently, Ground One is procedurally defaulted.

Pursuant to the procedural default doctrine, "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is applicable."  *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999).  *See also Murray v. Carrier*, 477 U.S. 478 (1986).  To show prejudice, a petitioner must demonstrate not only that the errors at his trial created the possibility of prejudice but that they worked to his actual and substantial disadvantage and infected the entire trial with error of constitutional dimensions. *United States v. Frady*, 456 U.S. 152 (1982).  In other words, he must show at least a reasonable probability of a different outcome.  *Henderson v. Campbell*, 353 F.3d at 892; *Crawford  v. Head*, 311 F.3d 1288, 1327-28 (11th Cir. 2002).

A petitioner may obtain federal habeas review of a procedurally defaulted claim, without a showing of cause or prejudice, if review is necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Murray v. Carrier*, 477 U.S. at 495-96; *Henderson v. Campbell*, 353 F.3d at 892. "A 'fundamental miscarriage of justice' occurs in an extraordinary case where a constitutional violation has resulted in the conviction of someone who is actually innocent." *Henderson v. Campbell*, 353 F.3d at 892. This exception requires a petitioner's "actual" innocence. *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001). To meet this standard, a petitioner must show a reasonable likelihood of acquittal absent the constitutional error. *Schlup v. Delo*, 513 U.S. 298, 327 (1995).

Petitioner fails to demonstrate cause and prejudice excusing his default. Petitioner has neither alleged nor shown that the fundamental miscarriage of justice exception applies. Because Petitioner fails to proffer specific facts showing an exception to procedural default, *Hill v. Jones*, 81 F.3d 1015 (11th Cir. 1996), Ground One is procedurally barred from federal review.

Even if this claim was not procedurally barred, the claim warrants no federal habeas relief because the claim is not cognizable on federal habeas review. Federal habeas relief for a person in custody pursuant to the judgment of a state court is available only on the ground that the custody violates the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); *Jones v. Goodwin*, 982 F.2d 464, 471 (11th Cir. 1993); *Krasnow v. Navarro*, 909 F.2d 451, 452 (11th Cir. 1990). Whether the trial court erroneously excluded the challenged

testimony is a matter of state law.  A claim that a state trial court erred in admitting evidence

under state laws or evidentiary rules provides no basis for federal habeas corpus relief

because the claim presents no federal constitutional question.  28 U.S.C. § 2254(a); *Estelle*

*v. McGuire*, 502 U.S. 62, 67 (1991) ("[I]t is not the province of a federal habeas court to

reexamine state-court determinations on state-law questions.").  The limitation on federal

habeas review to claims of federal constitutional error applies with equal force when a

petition, which actually involves state law issues, is couched in terms of a Fourteenth

Amendment due process violation.  *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988);

*Willeford v. Estelle*, 538 F.2d 1194, 1198 (5th Cir. 1976).  Consequently, Ground One

warrants no federal habeas relief.[5]

---

[5] Alternatively, to the extent that Petitioner's claim, affording it the most liberal construction, asserts a federal constitutional violation, the same result obtains under the AEDPA standards.  Generally, a state court evidentiary ruling cannot rise to the level of a federal due process violation "unless 'it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996) (*quoting Patterson v. New York*, 432 U.S. 197, 202-02 (1977)).  Reasonable restrictions may limit a defendant's right to present relevant evidence. *United States v. Scheffer*, 523 U.S. 303, 308 (1998).  *See also Michigan v. Lucas*, 500 U.S. 145, 149 (1991) ("[T]he right to present relevant testimony is not without limitation.  The right 'may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process.'") (*quoting Rock v. Arkansas*, 484 U.S. 44, 55 (1987) (*quoting Chambers v. Mississippi*, 410 U.S. 284, 295 (1973)).  Petitioner faults the state court for excluding Dr. Blau's testimony about certain "rape profiles."  Petitioner fails to present any factual evidence or legal authority to support a finding that the state court's exclusion of the testimony fundamentally offends some principle of justice as to amount to a federal due process violation. *See Montana v. Egelhoff*, 518 U.S. at 43.  Based on the testimony adduced during the proffer, the state court's limitation on Dr. Blau's testimony before the jury was neither contrary to clearly established federal law nor an unreasonable determination of the facts.  *See* 28 U.S.C. § 2254(d)(1), (2).

**Ground Two**

Petitioner challenges the trial court's denial of the ineffective assistance claim presented in his first Rule 3.850 motion in which he alleged that his attorney rendered ineffective assistance by failing to file a motion to suppress.[6]

Petitioner's claim challenges the state court's fact-finding process in his motion for post-conviction relief. This is clearly a state law claim challenging the state's application of state procedure that does not rise to the level of a federal constitutional violation. This challenge is an attack on a proceeding collateral to Petitioner's confinement and not the confinement itself. Such a claim is not cognizable on federal habeas corpus review. *See* 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. at 67.

A federal court is not the appropriate forum to challenge the process afforded in state collateral proceedings because the challenge attacks a proceeding collateral to the prisoner's confinement and not the confinement itself. *Quince v. Crosby*, 360 F.3d 1259, 1261-62 (11th Cir. 2004) ("[W]hile habeas relief is available to address defects in a criminal defendant's conviction and sentence, an alleged defect in a collateral proceeding does not state a basis for habeas relief."); *Spradley v. Dugger*, 825 F.2d 1566, 1568 (11th Cir. 1987) (a habeas claim that the state trial court violated a petitioner's due process rights because the court failed to conduct an evidentiary hearing and to attach to its opinion pertinent portions of the

---

[6] Petitioner presented this claim to the state court in his first state Rule 3.850 motion (Dkt. #14, Ex. 5). The state court afforded the State the opportunity to respond to this claim (Dkt. #14, Ex. 6). After the State responded, the state court denied this claim without an evidentiary hearing (Dkt. #14, Ex. 8).

record resolved only issues unrelated to the cause of petitioner's detention and stated no basis

for habeas relief).  Consequently, Petitioner is not entitled to relief on this ground.

To the extent that Petitioner presents Ground Two as an ineffective assistance claim

for failure to file a motion to suppress, the claim warrants no relief.  "[T]he cases in which

habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are

few and far between."  *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (*en banc*)

(*quoting Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)).  *Strickland v. Washington*, 466

U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and
> well documented.  In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052,
> 80 L.Ed.2d 674 (1984), the Supreme Court set forth a two-part test for
> analyzing ineffective assistance of counsel claims.  According to *Strickland*,
> first, the defendant must show that counsel's performance was deficient.  This
> requires showing that counsel made errors so serious that counsel was not
> functioning as the "counsel" guaranteed the defendant by the Sixth
> Amendment.  Second, the defendant must show that the deficient performance
> prejudiced the defense.  This requires showing that counsel's errors were so
> serious as to deprive the defendant of a fair trial, a trial whose result is reliable.
> *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052.

*Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998).

*Strickland* requires proof of both deficient performance and consequent prejudice.

*Strickland v. Washington*, 466 U.S. at 697 ("There is no reason for a court deciding an

ineffective assistance claim . . . to address both components of the inquiry if the defendant

makes an insufficient showing on one.");  *Sims v. Singletary*, 155 F.3d at 1305 ("When

applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two

grounds.").  "[C]ounsel is strongly presumed to have rendered adequate assistance and made

all significant decisions in the exercise of reasonable professional judgment." *Strickland v. Washington*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland v. Washington*, 466 U.S. at 690. *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland v. Washington*, 466 U.S. at 690.

Because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment," Petitioner must demonstrate that counsel's error prejudiced the defense. *Strickland v. Washington*, 466 U.S. at 691-92. To meet this burden, Petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v. Washington*, 466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland v. Washington*, 466 U.S. at 690-91. Petitioner cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful:

The test has nothing to do with what the best lawyers would have done.  Nor is the test even what most good lawyers would have done.  We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. . . .  We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992).  *Accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious:  the trial lawyers, in every case, could have done something more or something different.  So, omissions are inevitable. . . . [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.' ") (*en banc*) (*quoting Burger v. Kemp*, 483 U.S. 776, 794 (1987)).  *See also Jones v. Barnes*, 463 U.S. 745, 751 (1983) (counsel has no duty to raise frivolous claims).

Following an evidentiary hearing,[7] the state court denied this ineffective assistance claim based on the following findings of fact and conclusions of law:

## ISSUE

The defendant contends that "counsel's decision not to move for the suppression of evidence illegally obtained by St. Petersburg Police Department caused him prejudice [at] trial."

---

[7] Following the state court's denial of this claim without an evidentiary hearing, Petitioner appealed.  The state appellate court reversed and remanded, directing the lower state court to conduct an evidentiary hearing on the claim (Dkt. #14, Ex. 11).  After the hearing, the state court again denied the claim.  The state appellate court affirmed the denial in a *per curiam* decision without written opinion (Dkt. #14, Ex. 20).  This ineffective assistance claim in Petitioner's federal habeas petition is considered only to the extent that it was exhausted in his state Rule 3.850 motion, at the evidentiary hearing and on collateral appeal.

## EVIDENTIARY HEARING

The following parties offered testimony at the evidentiary hearing: Sgt. Scott McDonald, Lt. Greg Toffs, Officer Lanny Quinn, and Officer Douglas Allen, all of whom were, and still are, employed by the St. Petersburg Police Department; Steven Bartlett, Esquire, who represented the defendant at trial; and the defendant, Sean Pugh.  At the evidentiary hearing, the court heard testimony from the officers and the defendant to decide whether there, was any legal basis upon which to grant a motion to suppress. The court then heard testimony from Mr. Bartlett as to the reasons that he did not file such a motion in this case.

### A.    <u>Testimony from Law Enforcement</u>

The testimony from each of the law enforcement officers mentioned above was consistent and credible.  It established the following sequences of events:

> At approximately 8:45 p.m. on May 27, 1998, a clerk at the Suncoast Market in South St. Pete told Sgt. McDonald that a certain white female wanted "to talk to a cop" about an armed sexual battery.  Shortly thereafter, a 17 yr. old white female named Misty Tate arrived at the convenience store.  She proceeded to tell Sgt. McDonald that she was romantically involved with an individual named Cassanova Alexander (the defendant), that she and this individual had been involved in a pornographic website enterprise (www.ifriends.net), and that another underage girl who was working in connection with this website was raped by this individual at gunpoint, which rape was videotaped.  She then indicated that this individual drove a 1998 Chevrolet Cavalier, that he carried a firearm on his person or in his car, and that he was a large man who would not cooperate.  She further indicated that she and this other girl who was allegedly raped were frightened of this individual.

> Sgt. McDonald then apprised his supervisor, Lt. Greg Totts, of this information.  Together, they ran a check on the defendant's name and found 6 outstanding warrants for his arrest, which warrants were for misdemeanor worthless check charges. Officer Allen and Misty Tate then arranged, via phone call, for the defendant to come to her residence to engage in a sexual

liaison.  Thereafter, the defendant arrived at Misty Tate's residence driving a Chevrolet Cavalier.  He parked in the driveway. Officers Quinn and Sgt. McDonald were outside watching.  The defendant exited his vehicle, walked to the trunk, unlocked the trunk and removed a long item that he then carried with him back to the driver's seat of his car.  While the majority of officers testified that they could not see what item was removed from the trunk (since it was dark outside), Sgt. McDonald testified that he thought it was a firearm or rifle.

At this time, Officers Quinn and Sgt. McDonald moved in to effectuate the defendant's arrest.  Upon seeing the officers, the defendant drove his car forward, then reversed his car, at which time a marked police cruiser pulled up behind him to prevent his escape.  The defendant was then arrested pursuant to the outstanding warrants, read his Miranda rights, and searched. The officers did not locate a firearm on the defendant's person. Sgt. McDonald then searched the interior portion of the defendant's vehicle.  His search uncovered six .38 caliber bullets in the front console, a video recorder in the backseat, some identification cards with photographs of young females adhered thereto, and some technical documentation concerning the website.

Sgt. McDonald then informed Officers Quinn and Allen that he found ammunition in the front console but did not find the firearm in the vehicle's interior.  Officer Quinn proceeded to unlock the trunk and search the trunk's contents for the firearm. Because the trunk was "quite messy," Officer Quinn was forced to rummage through its contents and stack certain items. Several of these items (i.e., computer diskettes and videotapes) were stacked on top of an empty video equipment carrying case, one of which was a videotape with the label reading "Cami Live."

Shortly thereafter, Lt. Totts informed the defendant, who was sitting in the back of a marked police cruiser, that his "car was on private property and needed to be towed."  Lt. Totts testified that the defendant was extremely uncooperative, and said nothing in response thereto.

Thereafter, as the search of the vehicle was progressing, Lt. Totts and Misty Tate proceeded to Jamie Morris' house, which was located a block away.  Jamie Morris, otherwise known as "Cami," was the young girl to whom Misty Tate was referring when she initially reported to Sgt. McDonald that a young girl was raped at gunpoint by the defendant, which rape was videotaped.  Sgt. Totts, Misty Tate, and Jamie Morris then arrived back on the scene where the trunk of the defendant's vehicle was still being searched.  Jamie Morris and Misty Tate, upon seeing the videotape marked "Cami Live," exclaimed "That's the tape!"  The videotapes in the trunk and the aforementioned evidence obtained from the vehicle's interior was then seized as evidence of a possible crime.  Prior to the girls' identification of the videotape, the items had not been seized by Officer Quinn.

After the contents of the vehicle were inventoried, Lt. Totts discovered that the vehicle was not registered to the defendant. After attempting unsuccessfully to contact the registered owner of the vehicle, and having determined that there was no reasonable alternative to moving the vehicle, Lt. Totts had the defendant's car towed from Misty Tate's property.

## B.    <u>Testimony from the Defendant</u>

The testimony of the defendant was not much different from the officers' testimony.  The defendant testified that the purpose of his visit was not only to engage in a sexual encounter but to also return property.  However, this testimony was refuted by Officer Allen's testimony.  Further, the defendant testified that his person was searched three times, and that during the search of his trunk, Officer Quinn emptied its contents onto the ground outside the trunk.  To the extent the defendant's testimony conflicted with the testimony of law enforcement, the court finds the testimony of law enforcement to be more credible.

As to his ineffectiveness claim, the defendant testified that he requested Mr. Bartlett to file a motion to suppress.  In his Motion, the defendant alleged that Mr. Bartlett said, in response thereto, "there are no grounds."  At the hearing, the defendant testified that Mr. Bartlett, in response thereto, said that the

evidence would come in either under search incident to arrest or inventory search.

## C.   **Testimony from Mr. Bartlett, Trial Counsel**

Mr. Bartlett, a practicing attorney who was once a public defender, testified that he received all of the discovery in this case, and that it was "a very large file." He testified that he read through all the police reports, took numerous depositions, that the defendant wrote several letters to him regarding the case, and that he and the defendant talked frequently about why certain motions were filed and others were not. He testified that the defendant participated fully in his defense.

As to the motion to suppress, Mr. Bartlett testified that the defendant specifically advised him to file the motion. He testified that he researched the merits of such a motion, and that, in his opinion, he did not feel such a motion would be successful. He testified that he would have flied the motion if it had any merit because it would have made the trial much easier. Mr. Bartlett further testified that when he told the defendant that he would not be filing the motion, the defendant became upset.

On cross-examination, Mr. Bartlett testified that he examined the facts in this case on a step-by-step basis. He testified that the warrants made the initial stop legal, that the search was incident to the arrest, that he relied on United States v. Ross, 456 U.S. 798 (1982) in formulating his opinion, that he thought the officers had cause to search the trunk to locate the firearm, and that the contents of the trunk would have been "inevitably discovered" anyway through impoundment of the vehicle.

## **ANALYSIS**

It is undisputed that the outstanding arrest warrants gave law enforcement the right to effectuate the defendant's arrest when he presented himself at Misty Tate's house. Moreover, as incident to the arrest, the officers were legally permitted to search the defendant's person. Therefore, any evidence seized from the defendant's person as incident to his arrest is not subject to suppression.

As for the search of the vehicle's interior and trunk, this court previously held, in its order summarily denying this claim, that the search of the defendant's vehicle was legally permissible under New York v. Belton, 453 U.S. 454

(1981).  Assuming the <u>Belton</u> search should have been limited to the vehicle's interior, this court held that the search of the trunk was permissible either:  (a) to locate the firearm, since law enforcement had received credible information that the defendant always carried a firearm either on him or in his car; (b) to search the trunk for weapons because the defendant exhibited immediate control over the trunk by removing a baseball bat therefrom; or (c) to inventory the vehicle's contents subject to impoundment of the vehicle.

After considering the testimony adduced at the evidentiary hearing, the court, while not abandoning its previous ruling, finds that law enforcement had probable cause to search the entire vehicle, including the trunk, as explained below.[FN1]

> [FN1] In <u>Pugh v. State</u>, 804 So.2d 1278 (Fla. 2d DCA 2002), the Second District Court of Appeal, in reversing this court's summary denial, relied on its decision in <u>Betz v. State</u>, 793 So.2d 976 (Fla. 2d DCA 2001), and stated that although the police were authorized to search Pugh incident to arrest "it may not have been proper for the officers to extend that search to the trunk of the vehicle."  The Second District's decision in <u>Betz</u> has since been quashed by the Florida Supreme Court. <u>State v. Betz</u>, 815 So.2d 627 (Fla. 2002) (holding that probable cause permitted law enforcement to search the entire vehicle, including the trunk).

At the outset, the court notes that neither the subjective intent nor the motivation of law enforcement is binding on this court.  <u>Hernandez v. State</u>, 784 So.2d 1124, 1128 (Fla. 3d DCA 1999); <u>State v. A.J.</u>, 720 So.2d 1156 (Fla. 3d DCA 1998). Neither are the legal conclusions of law enforcement for that matter.  <u>Id.</u>  Hence, if probable cause exists under an objective standard, the search is valid.  <u>Id.</u>

The officers arrested the defendant based on outstanding misdemeanor warrants.  Because the defendant was in custody when law enforcement began their search of the vehicle, and because the defendant was not previously known to be a convicted felon, law enforcement cannot justify the search of the vehicle on the basis of officer safety or the possible occurrence of a crime (i.e., convicted felon in possession of firearm).

That said, law enforcement was nevertheless legally permitted to search the vehicle's interior.  The police confronted the defendant and arrested him in the

front seat of his vehicle after the defendant attempted to flee by driving his vehicle forward and then in reverse.  As such, the bright-line holding announced in <u>Belton</u> applies to this case.  <u>Thomas v. State</u>, 761 So.2d 1010, 1014 (Fla. 2000).  <u>Belton</u> holds that when law enforcement has made a lawful custodial arrest of the occupant of a vehicle, law enforcement may contemporaneously search the passenger compartment of the vehicle and may also examine any contents of any container found within the passenger compartment.  <u>Belton</u>, 453 U.S. at 460.

During the <u>Belton</u> search of the vehicle's interior, law enforcement uncovered the following items:  (a) fake i.d. badges with pictures of young girls taped over the badges; (b) a video camera along with a tripod stand; and (c) six .38 caliber bullets.  The information law enforcement received that night from Misty Tate was that the defendant raped an underage girl and videotaped it.  The discovery of the i.d. badges and video equipment inside the vehicle corroborated this information.  The initial report of the rape, the subsequent corroboration of this information, and the defendant's attempt to flee the scene upon seeing law enforcement, unquestionably amounted to probable cause.  Probable cause has been found to exist "where the facts and circumstances within their [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that 'an offense has been or is being committed."  <u>State v. Betz</u>, 815 So.2d 627, 633 (Fla. 2002) (quoting <u>Brinegar v. United States</u>, 338 U.S. 160, 175-76 (1949)).

"If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of that vehicle and its contents that may conceal the object of the search."  <u>United States v. Ross</u>, 456 U.S. 798, 825 (1982).  Accordingly, law enforcement was legally permitted to search the trunk for the videotape evidence of the alleged rape.  <u>Betz</u>, 815 So.2d at 634 (finding that probable cause existed to search the entire vehicle including the trunk based on a totality of the circumstances, including the smell of burnt marijuana emanating from the vehicle coupled with the defendant's furtive conduct); <u>Minnis v. State</u>, 577 So.2d 973 (Fla. 4th DCA 1991) (holding that police officers were not required to obtain warrant to search paper bag found in trunk of automobile where they had probable cause to believe that drugs were located some place in vehicle or on driver's person).

As such, the court finds that the defendant has failed to show deficient performance in that trial counsel's advice - that the motion to suppress would not have been successful - was erroneous.  Nor has the defendant shown any

prejudice in light of the fact that any motion to suppress would have been denied. <u>Lang v. State</u>, 826 So.2d 433 (Fla. 2d DCA 2002). Consequently, the defendant's remaining claim for postconviction relief fails under <u>Strickland v. Washington</u>, 466 U.S. 668, 687, 694, 104 S.Ct. 2052, 80 L.Ed. 2d 674 (1984).

(Dkt. #14, Ex. 13, Vol. I, pp. 193-99) (emphasis in original).[8]   To obtain relief on this ineffective assistance claim, Petitioner must establish that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying his Rule 3.850 motion.

At the evidentiary hearing, trial counsel testified that he researched the merits of a motion to suppress and determined that the motion would not be successful (Dkt. #14, Ex. 13, Vol. III, p. 351).[9]   Based on the testimony adduced at the evidentiary hearing, the state court reasonably concluded that the search of Petitioner's person and vehicle was justified because "[t]he initial report of the rape, the subsequent corroboration of this information, and the defendant's attempt to flee the scene upon seeing law enforcement, unquestionably amounted to probable cause" (Dkt. #14, Ex. 13, Vol. III, 198).   Consequently, the state court determined that trial counsel had no basis upon which to file a motion to suppress evidence. The state court further determined that counsel's advice to Petitioner that he would not prevail on a motion to suppress was not deficient and concluded that Petitioner failed to show prejudice in light of the fact that the motion would have been denied.

---

[8]   The state appellate court affirmed the denial of this claim in a *per curiam* decision without written opinion (Dkt. #14, Ex. 20).

[9]   The page numbers cited in Respondent's Exhibit 13 are the numbers located at the bottom right-hand corner of each page.

"Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994). Tactical decisions within the range of reasonable professional competence are not subject to collateral attack unless a decision was so "patently unreasonable that no competent attorney would have chosen it." *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983). The reasonableness of counsel's challenged conduct on the facts of the case, when viewed as of the time of counsel's conduct, decides an ineffectiveness claim. *Strickland v. Washington*, 466 U.S. at 690.

Petitioner fails to show that either the search of his person or vehicle, or the seizure of the contents found therein violated federal law. *See Zakrzewski v. McDonough*, 455 F.3d 1254, 1260 (11th Cir. 2006) (*citing Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986) (To obtain relief on an ineffective assistance claim based on trial counsel's failure to file a motion to suppress, Petitioner must prove: "(1) that counsel's representation fell below an objective standard of reasonableness, (2) that the Fourth Amendment claim is meritorious, and (3) that there exists a reasonable probability that the verdict would have been different absent the excludable evidence.")). Petitioner also fails to show that counsel performed deficiently.

Even assuming, *arguendo*, that Petitioner satisfies the deficient performance prong of *Strickland*, he cannot demonstrate that if trial counsel had pursued a motion to suppress, the trial court would have granted the motion. Consequently, Petitioner cannot demonstrate prejudice under *Strickland*. Absent a demonstration of prejudice, Petitioner cannot prevail

on this claim of ineffective assistance of counsel.  *See  Strickland v. Washington*, 466 U.S.

at 697.  The state court correctly applied *Strickland* in denying this claim in Petitioner's state

Rule 3.850 motion.  Consequently, Ground Two warrants no federal habeas relief because

Petitioner fails to meet his burden of proving that the state court unreasonably applied

controlling Supreme Court precedent or unreasonably determined the facts.  *See* 28 U.S.C.

§ 2254(d)(1), (2).

**Ground Three**

Petitioner contends that trial counsel conceded Petitioner's guilt in closing argument.

The state court denied this claim in Petitioner's second state Rule 3.850 motion:

> Regarding his . . argument that counsel conceded Defendant's guilt, Defendant
> is essentially alleging an ineffective assistance of counsel claim.  This court
> extensively addressed Defendant's ineffective assistance of counsel claim in
> a prior Order.  Defendant should have raised the instant claim in his earlier
> Rule 3.850 motion and has not presented to the court any reasons why he did
> not or could not have raised this claim in his prior motion.  See Johnson v.
> Singletary, 695 So.2d 263 (Fla. 1996).  Thus, under Rule 3.850(f),[10] the court
> finds that Defendant's failure to assert the instant claim in his prior motion
> renders the claim successive and subject to dismissal by the court.

---

[10]  Rule 3.850(f) provides:

(f) Successive Motions.  A second or successive motion may be dismissed if
the judge finds that it fails to allege new or different grounds for relief and the
prior determination was on the merits or, if new and different grounds are
alleged, the judge finds that the failure of the movant or the attorney to assert
those grounds in a prior motion constituted an abuse of the procedure governed
by these rules.

Fla. R. Crim. P. .850(f).

(Dkt. #14, Ex. 24).[11]

Generally, before a claim is procedurally barred from federal habeas review, a state court must reject reviewing an incorrectly presented claim.  The fact that a federal habeas petitioner failed to abide by a state procedural rule does not, standing alone, prevent a federal court from reaching the federal claim: "The state court must actually have relied on the procedural bar as an independent basis for its disposition of the case."  *Harris v. Reed*, 489 U.S. 255, 262 (1989) (*quoting Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985)).  *See also Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001) ("[A] state court's rejection of a federal constitutional claim on procedural grounds will only preclude federal review if the state procedural ruling rests upon [an] 'independent and adequate' state ground.").  A state court's procedural ruling constitutes an independent and adequate state rule of decision if (1) the last state court rendering a judgment in the case clearly and expressly states that it is relying upon a state procedural rule to resolve the federal claim without reaching the merits of the claim, (2) the state court's decision rests solidly on state law grounds and is not intertwined with an interpretation of federal law, and (3) the state procedural rule is not applied in an "arbitrary or unprecedented fashion," or in a "manifestly unfair manner".  *Judd v. Haley*, 250 F.3d at 1313 (*citing Card v. Dugger*, 911 F.2d 1494 (11th Cir. 1990)).  *See also Ford v. Georgia*, 498 U.S. 411, 424-25 (1991).

---

[11] Petitioner presents in his federal habeas petition the same claim alleged in his second Rule 3.850 motion.

The state court applied a state procedural rule and concluded that Petitioner's claim that trial counsel conceded Petitioner's guilt was not cognizable on collateral attack in a second successive state Rule 3.850 motion. *See Torres-Arboleda v. Dugger*, 636 So.2d 1321,1323 (Fla. 1994). The state appellate court affirmed the application of the procedural bar (Dkt. #14, Ex. 28). *See Harmon v. Barton*, 894 F.2d 1268, 1274 (11th Cir. 1990) (state appellate court's *per curiam* affirmance of the lower court's ruling explicitly based on procedural default is a clear and express statement of its reliance on an independent and adequate state law ground barring federal review). Florida courts consistently apply the procedural rule that a second or successive post-conviction motion that alleges new and different grounds than a defendant's first motion is an abuse of process unless the defendant shows justification for his failure to raise the new ground in his first Rule 3.850 motion. *See e.g.*, *Spaziano v. State*, 545 So.2d 843, 844 (Fla. 1989); *Christopher v. State*, 489 So.2d 22 (Fla. 1986). Accordingly, Ground Three of Petitioner's federal habeas petition is procedurally defaulted.

This default forecloses federal habeas review absent a showing of either cause and prejudice or a fundamental miscarriage of justice. *Harris v. Reed*, 489 U.S. 255, 262 (1989); *Crawford v. Head*, 311 F.3d 1288, 1327 (11th Cir. 2002); *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). Petitioner fails to demonstrate cause and prejudice excusing his default. Petitioner neither alleges nor shows that the fundamental miscarriage of justice exception applies. Because Petitioner fails to proffer specific facts showing an exception to

the procedural default rule, *Hill v. Jones*, 81 F.3d 1015 (11th Cir. 1996), Ground Three is

procedurally barred from federal review.[12]

     It is therefore ORDERED AND ADJUDGED that:

1.     Petitioner's petition for the writ of habeas corpus (Dkt. #1) is DENIED.

2.     The Clerk is to enter judgment for Respondent and close this case.

     **DONE** and **ORDERED** in Tampa, Florida on May 2, 2008.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Conformed copies to:
Counsel/Parties of Record

---

[12]  In his memorandum of law in support of his federal habeas petition, Petitioner states in his supporting argument of the ineffective assistance claim in Ground Three that "counsel essentially created a conflict of interest on his part by helping [the] prosecution prove its case," and that "[t]he state court's misinterpretation of fundamental error or plain error is against . . . due process" (Dkt. #2, p. 14). To the extent that these statements, liberally construed, assert independent federal constitutional claims, Petitioner is not entitled to relief. Petitioner presented these arguments in support of his ineffective assistance claim in his second Rule 3.850 motion but did not present separate and distinct claims of conflict of interest or due process. *See* Dkt. #12, Ex. 23. Consequently, these claims, if considered as separate bases for relief, are unexhausted. *See* 28 U.S.C. § 2254(b)(1)(A), (c); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Under state procedural rules, Petitioner cannot return to state court to present these claims in a second direct appeal or another successive Rule 3.850 motion. The claims are therefore procedurally defaulted. Petitioner fails to demonstrate cause and prejudice excusing his default, and neither alleges nor shows that the fundamental miscarriage of justice exception applies. *See Smith v. Jones*, 256 F.3d 1135, 1138. Because Petitioner fails to proffer specific facts showing an exception to procedural default, the conflict of interest and due process claims are procedurally barred from federal review.